## Hurst's Ex'rs v. Bowling.

Feb. 28, 1939.

S. M. WARD, Judge.

CRAFT & STANFILL for appellants.

J. T. BOWLING for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Appellants, W. A. Stanfill and C. D. Snyder, executors of the estate of Dr. Taylor Hurst, deceased, are appealing from a judgment directing that they pay the sum of $1420 to appellee, Rachel Bowling, for the care of an illegitimate child, Mary Taylor, left with her by Dr. Hurst in July, 1928. Dr. Hurst operated a hospital in Hazard, Kentucky. The illegitimate child was born in this hospital in the early part of July, 1928. Dr. Hurst never divulged the names of the parents of the child. He was the family physician of Rachel Bowling, and was attending her when her first child was born dead on or about July 23, 1928. Three days later he left Mary Taylor in the care of Rachel Bowling, who kept her and cared for her as her own child until she, Mary Taylor, died in May, 1935. It appears that appellee was to receive $20 a month for the care of the child as long as she kept it. According to her testimony, Dr. Hurst would not permit her to adopt the child because he refused to divulge the names of its parents.

Counsel for appellee states in his brief that it was clearly proven that Dr. Hurst was the father of Mary Taylor, but our examination of the evidence shows that the record does not substantiate this statement. Rachel Bowling stated that she did not think that Dr. Hurst was the father of the child, and the trial judge pointed out in his judgment that Dr. Hurst was not the father of Mary Taylor. It is urged also that Dr. Hurst contracted to pay Rachel Bowling $20 per month for the care of the child. There is evidence in the record to the effect that Dr. Hurst told Rachel Bowling that he would see that the money was paid if he had to take it out of his own pocket. According to the testimony of Elizabeth Wooton, a nurse at the hospital and whose evidence is strongly supported by the circumstances in the case, Dr. Hurst had made an arrangement with the relatives of Mary Taylor to collect $20 a month from them and turn it over to Rachel Bowling.

Rachel Bowling stated that she received about $200 and that the last payment was made to her in 1929. Dr. Hurst died in July, 1934. This action was filed in 1936. After appellants had raised the question of limitations, Section 2515, Kentucky Statutes, in their amended answer, following the time the deposition of Rachel Bowling was taken, her brother, Billie Warfield, testified that he had collected two $20 payments from Dr. Hurst; one in May, 1929, and one in May, 1932. His evidence, how-

ever, is very conflicting on certain points and, considering the circumstances under which it was given, merits little weight.

In their amended answer appellants averred also that any contract between Dr. Hurst and Rachel Bowling for the support of Mary Taylor was within the statute of frauds, and therefore void. In his opinion the trial judge stated that, "It appears from the entire record that Dr. Hurst was really acting for someone else in procuring the plaintiff to keep and care for the child, but it further appears that he made the express agreement to pay $20.00 per month himself to the plaintiff." The trial judge also held that the contract did not come within the statute of frauds. We have examined this record carefully, and are of the opinion that the trial court erred in this respect, and that, in view of the evidence and all the circumstances in the case, the contract clearly comes within the statute of frauds. Section 470, Kentucky Statutes.

Dr. Hurst was rendering a kindly service to Rachel Bowling when he left Mary Taylor with her following the death of her first-born. He was attempting also to shield the parents of the illegitimate child. In trying to accomplish this purpose it appears that he agreed to act as the intermediary between the relatives of Mary Taylor and Rachel Bowling in collecting, and turning over to Rachel Bowling, the money paid for the support of Mary Taylor. His alleged statements that he would see that the money was paid if he had to pay it himself is conclusive to us that he was acting for another in the payment of the money to Rachel Bowling. An action can not be brought upon a verbal promise to answer for the debt of another which can not be sustained under the statute of frauds. Laurel Grocery Co. v. Myers Bros., 262 Ky. 523, 90 S. W. (2d) 693.

Judgment reversed.